VOSS INTERNATIONAL CORP.

v.

UNITED STATES.

C.D. 4698; Court No. 75–8–02154.

United States Customs Court.

May 26, 1977.

Glad, Tuttle & White, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Wesley K. Caine and Bruce M. Mitchell, trial attorneys, New York City), for defendant.

MALETZ, Judge:

In this civil action plaintiff challenges the legality of special dumping duties that were assessed under the Antidumping Act of 1921, as amended (19 U.S.C. § 160 et seq.) against certain asbestos cement pipe which was imported from Japan in March 1972.[1] In making this challenge, plaintiff's complaint contains two causes of action, the first of which is the only one relevant to the present motions.[2] In that cause of action, plaintiff contends that the Tariff Commission's determination of injury—which, as noted, is a necessary precondition to the assessment of dumping duties—was invalid under 19 U.S.C. § 160(a) on the ground that it was achieved by a two to two vote of the five Commissioners who attended the meeting on the injury question,[3] while the fifth Commissioner present at the meeting de-

[1.] The Antidumping Act provides in general that if a foreign exporter sells merchandise to the United States at a price less than its "fair value," i. e., the price charged by the exporter in his home market—with resultant injury to a U. S. industry—a special dumping duty will be assessed upon the importation of the merchandise. If the exporter and importer are not related, this duty is measured by the difference between the higher "foreign market value" and the lower price charged the U. S. importer. The question as to whether merchandise is being sold at less than fair value is determined by the Secretary of the Treasury. If the Secretary makes an affirmative finding in this regard, the question as to whether there is injury is deter- mined by the United States Tariff Commission (now known as the United States International Trade Commission). If the Commission makes a determination of injury, the Secretary makes and publishes a finding of dumping. See, e. g., *F. W. Myers & Co., Inc., et al. v. United States,* 72 Cust.Ct. 219, 220, C.D. 4544, 376 F.Supp. 860, 862 (1974).

[2.] In its second cause of action plaintiff alleges that the basis used by the government for calculating the amount of dumping duties was erroneous.

[3.] The Tariff Commission has a membership of six Commissioners.

clined to vote.[4] According to plaintiff "equal division was achieved by the knowing and willful abstention from voting by * * * [one Commissioner] otherwise participating in the proceedings [and] was *ultra vires* and, therefore, null and void because the Tariff Commission exceeded its statutory authority by entertaining the abstention of a participating commissioner in order to achieve an affirmative determination when his vote would have materially affected the outcome of the proceeding and the nature of the final determination."

As a concomitant issue, plaintiff contends that "the Tariff Commission and the Secretary of the Treasury have each violated the procedures required of notice and reporting by 19 U.S.C. § 160(b) because said notice and report of the Tariff Commission's Determination of Injury states that said affirmative determination was achieved because * * * [one Commissioner] 'did not participate in the determination' when, in fact, he was present, and participating in the proceeding wherein the Determination of Injury was affectuated [*sic*], * * *."

Defendant argues that plaintiff's contentions are wholly without merit. It adds that there can be no question but that as a matter of law the Tariff Commission's determination of injury was completely valid under 19 U.S.C. § 160(a) and that its motion for partial summary judgment as to the first cause of action should be granted. Plaintiff, on the other hand, insists that for the reasons stated above, the Tariff Commission's determination of injury was invalid as a matter of law and that its cross-motion for summary judgment should therefore be granted. For the reasons that follow, it must be concluded that the Tariff Commission's determination of injury was valid as a matter of law, and that defendant's motion for partial summary judgment as to plaintiff's first cause of action must therefore be granted.

At the outset it is settled that a quorum of the members of the Tariff Commission could conduct the business of the Commission. *Frischer & Co. v. Bakelite Corporation*, 39 F.2d 247, 255, 17 CCPA 494, 504, T.D. 43964, *cert. denied*, 282 U.S. 852, 51 S.Ct. 29, 75 L.Ed. 755 (1930). Thus, it was not necessary for all six of its members to participate in any given meeting in order for the Commission to take valid action. As for what constituted a quorum, Congress expressly provided that a majority of the Commission—four—was sufficient. See 19 U.S.C. § 1330(c). In so providing, Congress merely codified the common law on the matter which, before enactment of 19 U.S.C. § 1330(c), had been applied to the Tariff Commission. See, e. g., *Frischer, supra*, 39 F.2d at 255, 17 CCPA at 504. See also *FTC v. Flotill Products*, 389 U.S. 179, 183–4, 88 S.Ct. 401, 19 L.Ed.2d 398 (1967), as to the common-law rule.

Prior to 1958, a majority of the quorum could render a valid determination on behalf of the Commission. As the court in *Frischer* stated, "[i]n the absence of statutory restriction the general rule is that a majority of a council or board is a quorum, and the majority of the quorum can act." 39 F.2d at 255, 17 CCPA at 505.

In 1958, Congress modified the rule in *Frischer* as it related to injury determinations in dumping investigations by amending 19 U.S.C. § 160(a) to provide, in relevant part, as follows:

> * * * For the purposes of this subsection, the said [Tariff] Commission shall be deemed to have made an affirmative determination [of injury] *if the Commissioners of the said Commission voting* are evenly divided as to whether its determination should be in the affirmative or in the negative. [Emphasis added.]

Thus, by the 1958 amendment Congress provided that an equally divided vote, by "the Commissioners * * * voting," on

---

**4.** To elaborate on the foregoing, the vote on injury was taken at a meeting of the Commission on April 20, 1972, at which five Commissioners were present. Two Commissioners voted affirmatively that an industry in the United States was being injured by reason of the importation of asbestos cement pipe from Japan; two voted negatively; and the fifth Commissioner present abstained. On the basis of this voting pattern, the Commission found injury pursuant to 19 U.S.C. § 160(a).

the question of injury in a dumping investigation, would be deemed an affirmative determination by the Commission.

■ The short of the matter is that on April 20, 1972, when the Tariff Commission voted on the question of injury, if a quorum of the Commission was present, an evenly divided vote on the question of injury would result, by operation of law, in an affirmative determination of injury.

Against this background, it is clear that on April 20, 1972, when the Tariff Commission voted on the question of injury, more than a sufficient number of Commissioners were present—five—to constitute a quorum of the Commission. Four Commissioners actually cast their votes on the question of whether injury to an industry was resulting from the importation of asbestos cement pipe from Japan. One additional member who attended the meeting did not participate in the vote. Thus, it is clear that the number of Commissioners present was more than sufficient to permit the Commission to act. Moreover, it is equally clear that pursuant to the 1958 amendment, an affirmative determination of injury was reached on April 20, 1972 since two Commissioners voted affirmatively and two Commissioners voted negatively. The unambiguous language of 19 U.S.C. § 160(a), as amended in 1958, provides that an affirmative determination of injury occurs when the Commissioners "voting" are evenly divided. And this is precisely what occurred on April 20, 1972.

Nor does the fact that one Commissioner was present but did not vote affect the validity of the determination of injury. A quorum would have been present even if this Commissioner had been absent from the meeting. Moreover, 19 U.S.C. § 160(a) refers to an even division of the Commissioners "voting," not an even division of the Commissioners present. Since there was in fact an even division of Commissioners voting on April 20, 1972, an affirmative finding of injury resulted as a matter of law.

However, as previously observed, plaintiff maintains that the Commission's decision by "equal division was achieved by the knowing and willful abstention from voting by * * * [one Commissioner] otherwise participating in the proceedings [and] was *ultra vires* and, therefore, null and void because the Tariff Commission exceeded its statutory authority by entertaining the abstention of a participating commissioner in order to achieve an affirmative determination when his vote would have materially affected the outcome of the proceeding and the nature of the final determination." From the foregoing, it appears that what plaintiff is arguing is this: Since he was present at the meeting when a vote was taken, the fifth Commissioner had an absolute duty to cast a numerically tie-breaking vote; in view of the fact that he failed to do so, the Tariff Commission acted improperly. Stated otherwise, what plaintiff is contending is that the statutory tie-breaking provision in 19 U.S.C. § 160(a) can apply only when either four or six members of the Commission are present at a meeting where action is taken, and when all have voted and are equally divided. There can be, in plaintiff's view, no justifiable reason for a Commissioner to decline to participate in a vote.

■ The difficulty with plaintiff's contention is that it finds no support in the language of 19 U.S.C. § 160(a) or any other portion of the statute. Neither 19 U.S.C. § 160(a) nor any other statutory provision requires a Commissioner who is present at a meeting to vote on every issue presented for decision. Further, 19 U.S.C. § 160(a) by its terms provides for an affirmative determination "if *the Commissioners* of the said [Tariff] Commission *voting* are evenly divided * * *." (Emphasis added.) This language clearly looks only to the Commissioners who actually participate in the vote on a given question; it is unconcerned with the number of Commissioners who happen to be present at a meeting when a vote is taken. Plaintiff is attempting to read into 19 U.S.C. § 160(a) a pre-condition to the operation of the "evenly divided" provision which Congress has manifestly not required.

Also without merit is plaintiff's further argument that the fifth Commissioner

present at the meeting was obligated to vote and that his abstention from voting made the Commission's determination *ultra vires.* The facts are simply that for whatever his reason this Commissioner did not participate in the vote and in so doing exercised a legally permissible right. See, e. g., *Greater Boston Television Corporation v. Federal Communications Commission,* 143 U.S.App.D.C. 383, 444 F.2d 841, 861 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971); *Robert's Rules of Order* (7th ed. 1970) § 44, p. 344. The point is that nonparticipation of a member of a Commission does not affect the action of the Commission as long as a statutorily sufficient number of Commissioners are present to constitute a quorum. *Ibid.*

There is the further consideration that in enacting 19 U.S.C. § 160(a) in 1958, Congress stated that one of its objectives was "to provide for greater  *  *  *  speed, and efficiency in  *  *  *  [the Antidumping Act's] enforcement  *  *  *." S.Rep. No.1619, 85th Cong., 2d Sess. (1958), Vol. 2, U.S.Code Cong. & Admin.News (1958), p. 3499. But this objective would be clearly thwarted if the "evenly divided" provision were given the construction which plaintiff is urging, namely, that the provision can apply only when either four or six members of the Commission are present at a meeting where action is taken and all have voted and are equally divided. It is apparent that under plaintiff's construction of the statute, a finding of injury would have been valid under 19 U.S.C. § 160(a) if only four Commissioners had been present and had voted on April 20, 1972. Thus, even under plaintiff's theory, a valid determination of injury could have been made had the fifth Commissioner simply absented himself from the entire meeting. The effect of plaintiff's construction of the statute would then be to encourage Commissioners who honestly could not decide an issue to refrain from attending a meeting, even though other issues were scheduled for discussion, for fear that their mere presence would result in an

invalid decision by the Commission as a whole. It is obvious that such a result would be wholly inconsistent with the desire of Congress to encourage speed and efficiency in the Commission's work.

■ Further, plaintiff argues (as previously set forth) that "the Tariff Commission and the Secretary of the Treasury have each violated the procedures required of notice and reporting by 19 U.S.C. § 160(b) because said notice and report of the Tariff Commission's Determination of Injury states that said affirmative determination was achieved because  *  *  *  [one Commissioner] 'did not participate in the determination' when, in fact, he was present, and participating in the proceeding wherein the Determination of Injury was affectuated *[sic]*,  *  *  *."[5]

The statutory language which plaintiff contends has been violated is 19 U.S.C. § 160(a) (rather than 19 U.S.C. § 160(b), as incorrectly stated by plaintiff). This provision, 19 U.S.C. § 160(a), reads in part:

Whenever the Secretary of the Treasury (hereinafter called the "Secretary") determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States or elsewhere at less than its fair value, he shall so advise the United States Tariff Commission, and the said Commission shall determine within three months thereafter whether an industry in the United States is being or is likely to be injured  *  *  *. *The said Commission, after such investigation as it deems necessary, shall notify the Secretary of its determination, and, if that determination is in the affirmative, the Secretary shall make public a notice  *  *  *  of his determination and the determination of the said Commission.*  *  *  * [Emphasis added.]

It is clear that the above procedures have been lawfully followed. As already indicated, the Tariff Commission made a valid affirmative determination of injury in the dumping investigation it conducted. In TC 91 Under the Antidumping Act, 1921, as Amended, TC Publication 483 (May 1972), also published in 37 Fed.Reg. 9267 (1972).

---

5. The excerpt from the report of the Tariff Commission to which plaintiff refers is contained at page 2 of the Commission's *Determination of Injury in Investigation No. AA1921-*

Publication 483, *supra,* note 5, the Commission notified the Secretary of the Treasury of this determination. On June 26, 1972, the Assistant Secretary of the Treasury, on behalf of the Secretary of the Treasury, published in the Federal Register a notice in which he referred to the Tariff Commission's determination, as well as to the Secretary of the Treasury's own determination, of sales or likelihood of sales of less than fair value. The notice concluded with the following language (37 Fed.Reg. 12727 (1972)):

> On behalf of the Secretary of the Treasury, I hereby make public these determinations, which constitute a finding of dumping \* \* \*.

Given the above-quoted language of 19 U.S.C. § 160(a), it must be concluded that plaintiff's allegations of violations by the government are groundless; proper procedures were manifestly followed.

Plaintiff, however, contends that the procedures were illegal on the ground that TC Publication 483 did not recite the fact that, although he was present at the meeting, the fifth Commissioner did not participate in the voting on April 20, 1972. But this contention again ignores the distinction between Commissioners voting and Commissioners attending a meeting where a vote is taken, as those concepts relate to valid determinations by the Commission. Obviously, from what has been said, it is *voting* that constitutes participation in a Commission determination under 19 U.S.C. § 160(a). When this is recognized, the difficulty with plaintiff's argument is readily apparent.

■ One last matter remains. At a previous stage in the proceeding, the court denied both plaintiff's motion for summary judgment and defendant's cross-motion for partial summary judgment; ordered that the case be remanded to the International Trade Commission so as to allow that agency to consider once again, by way of a new

vote, the injury question; ordered that the case by stayed until the vote by the Commission was had; and directed that the court be apprised by defendant's counsel within 120 days of the results thereof. Thereafter, the court was advised that the Commission had chosen to stand by its original vote and corresponding determination on injury and that the agency continued to believe that its original vote was valid and that a new vote should not be taken.

In this setting, plaintiff insists that defendant is collaterally estopped from arguing the validity of the Commission's injury determination. This argument is grounded on the premise that implicit in the court's order remanding the case to allow the Commission to reconsider the issue of injury by way of a new vote was a decision by this court that the Commission's determination was invalid. The fact is, however, that the court's order neither expressly nor by implication decided the issue of the validity of the Commission's injury determination. To the contrary, the express terms of the order support the opposite conclusion. For the court denied both plaintiff's motion for summary judgment and defendant's cross-motion for partial summary judgment. In addition, the court stayed the proceedings.

In these circumstances, the denial of the parties' motions regarding the question of validity means that the court made no finding as to such question. Furthermore, the stay placed this case in abeyance, and the court reserved its decision regarding the issue of validity.[6]

Thus, the issue of validity of the Commission's original determination is now before the court again. As the plaintiff stated, citing *Ford Motor Co. v. National Labor Relations Board,* 305 U.S. 364, 372, 59 S.Ct. 301, 83 L.Ed. 221 (1939), the Commission having failed to act on the remand, the court can proceed with its consideration of the motions before it. It is not precluded from doing so either by estoppel or by the

---

**6.** Parenthetically, it is to be observed that while not set forth in the court's order, the remand and stay were motivated in major part by the court's desire to avoid needless judicial controversy. For on remand had all members of the Commission voted on the injury question or had the fifth Commissioner actually voted, all controversy as to the validity of the injury determination would have been avoided.

"law of the case." The failure of the Commission to vote again merely returns the parties to the *status quo* prior to the remand.

In view of the foregoing, defendant's motion for partial summary judgment as to plaintiff's first course of action is granted and plaintiff's cross-motion for summary judgment is denied.