ARMSTRONG BROS. TOOL CO., Bergman Tool Manufacturing Co., Inc., Duro Metal Products Company, Milwaukee Tool & Equipment Co., Inc., Proto Tools Division, Ingersoll Rand Company, Warren Tool Corporation, Wilton Tool Division of Wilton Corporation and Woodings-Verona Tool Works

v.

UNITED STATES (Great Neck Saw Manufacturing, Incorporated, Party-in-Interest).

C.D. 4751; Court No. 77-8-02004.

United States Customs Court.

June 15, 1978.

Stewart & Ikenson, Washington, D. C. (Frederick L. Ikenson, Washington, D. C., of counsel), for plaintiffs.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Joseph I. Liebman and William L. Atkin, trial attys., New York City), for defendant.

*Opinion and Order on Defendant's Motion to Strike*

NEWMAN, Judge:

This is an American manufacturers' action brought pursuant to 28 U.S.C. § 1582(b) (1970), 28 U.S.C. § 2632(a) (Supp. V 1975) and 19 U.S.C. § 1516(c) (Supp. V 1975), involving the Antidumping Act of 1921, as amended (19 U.S.C. §§ 160, *et seq.* (1970 and Supp. V 1975)) (Antidumping Act).

Plaintiffs allegedly are domestic manufacturers and/or wholesalers of certain hand tools, viz., chisels, punches, hammers and sledges, vises, c-clamps and battery service tools. The party in interest, Great Neck Saw Manufacturing, Incorporated, is the consignee in New York Seaport Entry No. 77–471887, of July 20, 1977, who imported hand tools falling within the class or kind of merchandise involved in this action without assessment of antidumping duties, and who has been made a party pursuant to 19 U.S.C. § 1516(c).[1]

Defendant has moved, ostensibly under rule 1.1(b), to strike portions of plaintiffs' complaint (paragraphs 7, 9 through 11, and parts of the prayer for relief) on jurisdic-

1. Under 19 U.S.C. § 1516(f) (Supp. V 1975), the consignee or his agent has the right to appear and be heard as a party in interest in an action brought by an American manufacturer pursu-ant to section 1516. In the present case, however, the party in interest, Great Neck Saw Manufacturing, Incorporated, did not file any papers in connection with the present motion.

tional grounds, and to compel plaintiffs to file an amended complaint.

## 1.

At the outset, it would be helpful to summarize briefly the jurisdictional bases for the instant action.

28 U.S.C. § 1582(b) grants to the Customs Court exclusive jurisdiction of civil actions brought by American manufacturers, producers or wholesalers pursuant to 19 U.S.C. § 1516. Additionally, 28 U.S.C. § 2632(a) reads:

(a) A party may contest * * * a decision of the Secretary of the Treasury made under section 516 of the Tariff Act of 1930, as amended, * * * by bringing a civil action in the Customs Court. A civil action shall be commenced by filing a summons in the form, manner, and style and with the content prescribed in rules adopted by the court.

Section 1516(c) provides, *inter alia,* that an American manufacturer, producer or wholesaler may contest the nonassessment of antidumping duties by the Secretary of the Treasury (Secretary).

In *Voss International Corp. v. United States,* 432 F.Supp. 205, 78 Cust.Ct. 130, 131, n.1, C.D. 4698 (1977), Judge Maletz succinctly summarized the salient provisions of the Antidumping Act and the procedures applicable thereunder:

The Antidumping Act provides in general that if a foreign exporter sells merchandise to the United States at a price less than its "fair value," i. e., the price charged by the exporter in his home market—with resultant injury to a U. S. industry—a special dumping duty will be assessed upon the importation of the merchandise. If the exporter and importer are not related, this duty is measured by the difference between the higher "foreign market value" and the lower price charged the U. S. importer. The question as to whether merchandise is being sold at less than fair value is determined by the Secretary of the Treasury. If the Secretary makes an affirmative finding in this regard, the question as to whether

there is injury is determined by the United States Tariff Commission (now known as the United States International Trade Commission). If the Commission makes a determination of injury, the Secretary makes and publishes a finding of dumping. See, e. g., *F. W. Myers & Co., Inc., et al. v. United States,* 376 F.Supp. 860, 862, 72 Cust.Ct. 219, 220, C.D. 4544 (1974).

## 2.

As mentioned in *Voss International Corp.,* under the Antidumping Act, if the Secretary makes an affirmative finding with respect to sales at less than fair value (LTFV), the question as to whether there is injury will then be determined by the International Trade Commission (Commission). Here, the Commission's notice of a negative injury determination, dated December 2, 1975 and published in the Federal Register (40 FR 57517 (1975)), discloses the background of this litigation, so far as pertinent to the present motion:

On September 2, 1975, the United States International Trade Commission received advice from the Department of the Treasury that certain nonpowered handtools from Japan, that is, chisels, punches, hammers and sledges (with or without handles), vices, c-clamps and battery service tools, other than hammers from Imoto Hamono Co., Ltd., and Kyoto Tool Co., Ltd., sledges from Hirota Tekko K. K., and battery service tools from Tashiro Seisakusho and Japan Export Brush Co., Ltd., are being, or are likely to be, sold in the United States at less than fair value within the meaning of the Antidumping Act, 1921, as amended (19 U.S.C. 160(a)). Accordingly, on September 10, 1975, the Commission instituted investigation No. AA1921–149 under section 201(a) of said act to determine whether an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation of such nonpowered hand tools into the United States. Subsequently, on October 15, 1975, the Department of the Treasury amended its

determination so that the only battery service tools covered thereby are battery terminal lifters. The Commission, therefore, on October 23, 1975, amended the scope of its investigation to make it correspond with the advice received.

\* \* \* \* \* \*

The United States International Trade Commission has unanimously determined that an industry in the United States is not being injured or is not likely to be injured, or is not prevented from being established, by reason of the importation of chisels, punches, hammers and sledges (with or without handles), vises, c-clamps, and battery terminal lifters from Japan that are being, or are likely to be, sold at less than fair value within the meaning of the Antidumping Act, 1921, as amended.

The Secretary's amended LTFV determination of October 15, 1975 (40 FR 49111 (1975)) effectively terminated the antidumping proceeding respecting the battery service tools, other than battery terminal lifters. Therefore, unlike the other merchandise which is also the subject of this civil action, there was no negative injury determination made by the Commission relating to the battery service tools, other than battery terminal lifters.

3.

After filing a petition with the Secretary and complying with the other conditions precedent to the initiation of litigation in the Customs Court prescribed by 19 U.S.C. § 1516(a) and (c),[2] plaintiff commenced this action on August 22, 1977 challenging the Commission's negative injury determination (40 FR 57517 (1975)) (hereafter "first issue"), and the action allegedly taken by the

Commission, Commission staff, and the Secretary respecting certain battery service tools, other than battery terminal lifters. These tools were originally encompassed in the Secretary's LTFV investigation and affirmative determination (40 FR 41155 (1975)), but were subsequently excluded from the antidumping proceeding (40 FR 49111 (1975)) (hereafter "second issue").[3] Specifically, plaintiffs' summons sets forth the following claims:

The Secretary of the Treasury erred, as a matter of law, by amending his less than fair value determination in the case of certain nonpowered hand tools from Japan so as to exclude from the term "battery service tools" all tools other than battery terminal lifters. The International Trade Commission erred, as a matter of law, by eliminating from the class or kind of merchandise under investigation in the subject Antidumping Act case all battery service tools other than battery terminal lifters, and by concluding that an American industry was not being or likely to be injured or prevented from being established by reason of imported chisels, punches, hammers and sledges (with or without handles), vises, c-clamps, and battery service tools from Japan, sold at less than fair value. The Secretary of the Treasury should have found, as a matter of law, that an American industry was being or likely to be injured or prevented from being established by reason of the aforedescribed imported merchandise from Japan, sold at less than fair value; he should have published a finding of dumping with respect to the aforedescribed imported merchandise from Japan; the subject entry should have been appraised in accordance with the Antidumping Act of 1921, and therefore, the

---

**2.** No question has been raised concerning plaintiffs' compliance with the procedural requirements of 19 U.S.C. § 1516(a) and (c).

**3.** The term "battery service tools", as used initially by the Secretary and the Commission, included battery terminal lifters, battery post and terminal cleaning brushes, battery terminal spreaders, angle-nose pliers, booster cables and battery service kits (terminal puller, cleaning brush and two terminals). 40 FR 24218, 41155

and 42607. However, the Secretary amended his affirmative LTFV determination to exclude all battery service tools except battery terminal lifters (40 FR 49111); and subsequently the Commission amended the scope of its injury investigation in conformity with the Secretary's amended LTFV determination, excluding the battery service tools, other than battery terminal lifters (40 FR 50320).

foreign market (or constructed) value and the purchase (or exporter's sales) price should have been ascertained, and, further, to the extent that the foreign market (or constructed) value exceeded the purchase (or exporter's sales) price, antidumping duties should have been assessed.

On September 27, 1977, plaintiffs filed their complaint alleging the following in paragraphs 7 and 9 through 11:

7. Between the date of the aforedescribed Determination of Sales at Less Than Fair Value and the Commission hearing, the Commission staff asked the Treasury Department to amend its Determination of Sales at Less Than Fair Value by eliminating from the scope thereof all battery service tools other than battery terminal lifters. The Treasury Department accommodated the Commission staff and on October 21, 1975, the Assistant Secretary of the Treasury published in the Federal Register an Amendment of Determination of Sales at Less Than Fair Value consistent with the Commission staff request (40 Fed.Reg. 49111). The Commission, on October 23, 1975, the second day of the hearing, amended the scope of its investigation to make it correspond with the new advice received from the Treasury Department, and on October 29, 1975, published in the Federal Register notice of the amendment of investigation (40 Fed.Reg. 50320).

\*  \*  \*  \*  \*  \*

9. The Commission staff, in requesting the Treasury Department to modify its Determination of Sales at Less Than Fair Value, acted arbitrarily and in excess of its authority.

10. The Treasury Department, in modifying its Determination of Sales at Less Than Fair Value, acted arbitrarily and in excess of its authority.

11. The Commission, in eliminating battery service tools other than battery terminal lifters from the scope of its investigation and determination, acted arbitrarily and in excess of its authority.

In their prayer for relief, plaintiffs seek:

\*  \*  \*  that this Honorable Court (1) determine that the negative injury decision of the International Trade Commission in the case of chisels, punches, hammers and sledges, vises, c-clamps, and battery terminal lifters from Japan, reported at 40 Fed.Reg. 57517 (1975), was erroneous, as a matter of law, and that, as a matter of law, an American industry was being or was likely to be injured or prevented from being established by reason of imports of chisels, punches, hammers and sledges, vises, c-clamps, and battery service tools from Japan sold at less than fair value; (2) direct the Secretary of the Treasury to publish a finding of dumping in the matter of chisels, punches, hammers and sledges, vises, c-clamps, and battery service tools from Japan, forthwith; (3) direct the Regional Commissioner at New York (a) to ascertain the foreign market (or constructed) value and the purchase (or exporter's sales) price of any chisels, punches, hammers and sledges, vises, c-clamps, and battery service tools from Japan covered by New York Seaport Consumption Entry No. 77–471887 of July 20, 1977, and (b) if and to the extent that the foreign market (or constructed) value exceeds the purchase (or exporter's sales) price, to assess antidumping duties; and (4) provide any other relief which this Honorable Court deems just and proper.

4.

As indicated at the outset, this case is presently before the court on defendant's motion to strike portions of the complaint. Specifically, defendant's motion is directed to paragraphs 7, 9 through 11 and the references in the prayer for relief to battery service tools other than battery terminal lifters. The predicate of defendant's motion is that the court lacks jurisdiction over the second issue raised by the complaint involving the battery service tools other than battery terminal lifters.

Defendant contends that the Secretary's amendment of his LTFV determination on October 15, 1975 (40 FR 49111) was a nega-

tive LTFV determination respecting battery service tools, other than battery terminal lifters, which was reviewable solely under 19 U.S.C. § 1516(d). Continuing, defendant argues that although "[s]ection 516(c) establishes a cause of action pursuant to which an American manufacturer may contest, *inter alia*, a negative International Trade Commission determination as to injury under the Antidumping Act, * * * in this case, the International Trade Commission did not reach a negative injury determination as to battery service tools other than battery terminal lifters because the final LTFV determination made by the Secretary of the Treasury, pursuant to 19 U.S.C. § 160, did not include battery service tools other than battery terminal lifters."

Plaintiffs insist that defendant's motion to strike should be denied as procedurally incorrect, since the jurisdictional question relating to the second issue in plaintiffs' complaint should have been raised by a motion to dismiss. Respecting the merits of the jurisdictional question raised by defendant's motion, plaintiffs urge that *"if it is determined that the Customs Court has jurisdiction to review negative injury determinations under the language of section 516(c),* the Court also must have jurisdiction to review the kind of alleged wrongdoing by Treasury, the International Trade Commission, and the Commission staff presented as the second issue herein" (plaintiffs' emphasis). Further, plaintiffs advance the argument that Congress did not intend a construction of the statute "requiring plaintiffs to fractionate its litigative efforts—by first contesting the truncation issue in a section 516(d) proceeding, and then contesting the negative injury determination in a section 516(c) proceeding * * *".

### 5.

■ As previously noted, defendant suggests that its motion to strike is authorized by rule 1.1(b), which so far as pertinent reads: " * * * Where, in any proceeding

or in any instance, there is no applicable rule of procedure, the judge or judges, before whom the action is pending, may prescribe the same".

I agree with plaintiffs' contention that defendant's motion to strike is procedurally inappropriate. Under rule 4.7(b)(2), defendant is provided with the defense of lack of jurisdiction of the subject matter. Inasmuch as defendant's motion contests the jurisdiction of the court to adjudicate the second issue in plaintiffs' complaint, defendant's motion is essentially one for dismissal of the action in part for lack of subject matter jurisdiction pursuant to rule 4.7(b)(2), and I shall so treat it.[4] *Cf. SCM Corporation v. United States (Brother International Corporation, Party-in-Interest),* 80 Cust.Ct. ——, C.R.D. 78–2 (1978).

### 6.

■ The court's jurisdiction under 19 U.S.C. § 1516(c) to review the Commission's negative injury determination (40 FR 57517 (1975)) is not in dispute. In view of Chief Judge Re's recent exhaustive and well-reasoned opinion in *SCM*, discussed *infra*, there can be no doubt that the Customs Court, rather than the District Court, has exclusive jurisdiction to review a negative injury determination by the Commission under the Antidumping Act. Hence, the sole matter for decision is whether the second issue in plaintiffs' complaint is properly within the purview of subsection (c). In resolving this issue, it is appropriate to first examine the language of the pertinent statutory provisions. Thus, 19 U.S.C. § 1516(a), (c) and (d), so far as pertinent, read:

(a) * * * The Secretary shall, upon written request by an American manufacturer, producer, or wholesaler, furnish * * * the special duty described in section 161 of this title (hereinafter in this section referred to as "antidumping duties"), if any, imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at

---

**4.** *Cf.* Fed.R.Civ.P. 12(h)(3), applicable to the district courts, which provides: "(3) Whenever it appears by suggestion of the parties or other-

wise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

wholesale by him. If such manufacturer, producer, or wholesaler believes * * * antidumping duties should be assessed, he may file a petition with the Secretary setting forth (1) a description of the merchandise, (2) the appraised value, the classification, or the rate or rates of duty that he believes proper and (3) the reasons for his belief including, in appropriate instances, the reasons for his belief that * * * antidumping duties should be assessed.

   \*     \*     \*     \*     \*     \*

(c) * * * If the Secretary decides that * * * antidumping duties should not be assessed, he shall so inform the petitioner. If dissatisfied with the decision of the Secretary, the petitioner may file with the Secretary, not later than thirty days after the date of the decision, notice that he desires to contest * * * the failure to assess * * * antidumping duties upon, the merchandise. Upon receipt of notice from the petitioner, the Secretary shall cause publication to be made of his decision * * * that * * antidumping duties should not be assessed and of the petitioner's desire to contest, and shall thereafter furnish the petitioner with such information as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at such ports of entry designated by the petitioner in his notice of desire to contest, as will enable the petitioner to contest the * * * failure to assess * * * antidumping duties upon, such merchandise in the liquidation of one such entry at such port. The Secretary shall direct the appropriate Customs officer at such ports to notify the petitioner by mail immediately when the first of such entries is liquidated.

(d) * * * Within 30 days after a determination by the Secretary—

(1) under section 160 of this title, that a class or kind of foreign merchandise is not being, nor likely to be, sold in the United States at less than its fair value, * * *

   \*     \*     \*     \*     \*     \*

an American manufacturer, producer, or wholesaler of merchandise of the same class or kind as that described in such determination may file with the Secretary a written notice of a desire to contest such determination. Upon receipt of such notice the Secretary shall cause publication to be made thereof and of such manufacturer's, producer's, or wholesaler's desire to contest the determination. Within 30 days after such publication, such manufacturer, producer, or wholesaler may commence an action in the United States Customs Court contesting such determination.

▮ It is apparent from the foregoing statutory scheme that while an American manufacturer is limited by subsection (d)(1) to contesting a negative LTFV determination, under subsection (c) the manufacturer may contest the nonassessment of antidumping duties without limitation as to the basis for such nonassessment. Consequently, even assuming *arguendo* that the Secretary's amended LTFV determination was contestable by plaintiffs under subsection (d)(1) as a negative LTFV determination, I see nothing in the obviously broad scope of subsection (c) that precludes plaintiffs from contesting under that provision the Secretary's exclusion of battery service tools (other than battery terminal lifters) from the antidumping investigation, as well as the Commission's negative injury determination reported at 40 FR 57517 (1975).

In *SCM* the Court addressed the issue of whether the plaintiff, an American manufacturer, could contest a negative injury determination by the Commission pursuant to 19 U.S.C. § 1516(c). In seeking to have the action dismissed for lack of jurisdiction, plaintiff in the *SCM* case pointed out that there is no specific statutory provision that expressly grants jurisdiction to the Customs Court to review a negative injury determination by the Commission in an American manufacturer's action, and contended that the language in subsection (c) "failure to assess * * * antidumping duties" provides for contesting only the Secretary's failure to assess antidumping duties. The

thrust of the Government's position was that the "failure to assess" language in section 1516(c) includes all preliminary determinations which enter into the Secretary's failure to assess antidumping duties, including the Commission's negative injury determination.

In sustaining the Government's position, Chief Judge Re stated as the linchpin of his decision:

The language of section 516(c) that permits an American manufacturer to contest "the failure to assess * * * antidumping duties" *contains no limitations, and is sufficient to include a challenge to the preliminary determinations that go into a decision to assess, or not to assess, dumping duties.* * * * [Emphasis added].

Plainly, a decision of the Secretary respecting sales at LTFV is just as much a "preliminary determination that goes into a decision to assess, or not to assess, dumping duties", as is the Commission's injury determination. In consonance with Chief Judge Re's rationale in *SCM* "that section 516(c) be interpreted to afford review of *all issues* in antidumping *cases*" (emphasis added), I must concur with plaintiffs' contention here that "if it is determined [in *SCM*] that the Customs Court has jurisdiction to review negative injury determinations under the language of section 516(c), the Court also must have jurisdiction to review the kind of alleged wrongdoing by Treasury, the International Trade Commission, and the Commission staff presented as the second issue herein".

7.

Lastly, we consider this action insofar as plaintiffs seek an injury determination respecting the battery service tools. As may be noted *supra*, the Commission's injury decision reported at 40 FR 57517 (1975) covered chisels, punches, hammers and sledges, vises, c-clamps, and *battery terminal lifters* from Japan, while plaintiffs' prayer for relief includes "battery service tools".

As mentioned above, when the Secretary amended his LTFV determination on October 15, 1975 to exclude battery service tools (other than battery terminal lifters), the antidumping investigation respecting such battery service tools was terminated. Accordingly, as stressed by defendant, there has been no injury determination made by the Commission respecting battery service tools other than the battery terminal lifters. Fundamentally, an affirmative determination of injury as well as sales at LTFV is a condition precedent to a finding of "dumping". *SCM Corporation v. United States, supra; Voss International Corp. v. United States, supra.* Absent an injury determination by the Commission respecting battery service tools (other than battery terminal lifters), the issue of injury insofar as that merchandise is concerned is not ripe for judicial review. Consequently, plaintiffs' action is dismissed, but without prejudice to renewal insofar as it presently seeks a judicial determination of injury respecting battery service tools not encompassed by the Commission's negative determination of December 2, 1975 (40 FR 57517).

In view of the foregoing observations, it is hereby ORDERED, ADJUDGED AND DECREED:

1. Defendant's motion to strike is denied.

2. Plaintiffs' action is dismissed, but without prejudice to renewal insofar as it presently seeks a judicial review of injury respecting battery service tools not encompassed by the Commission's negative determination of December 2, 1975 (40 FR 57517).

3. Defendant shall serve and file its answer to the complaint herein within fifteen (15) days of the service of this order.