**VOSS INTERNATIONAL CORP.,**
**Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4801; Court No. 75–8–02154.**

United States Customs Court.

May 7, 1979.

328

Glad, Tuttle & White, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen. (David M. Cohen, Branch Director, Washington, D. C., Joseph I. Liebman, Atty. in

Charge, Field Office for Customs Litigation, New York City), for defendant.

MALETZ, Judge:

In this case plaintiff challenges the amount of special dumping duties that were assessed against asbestos cement pipe which was exported from Japan on February 13, 1972 and entered at the port of Los Angeles in March 1972.[1] The case arises as follows: Pursuant to the Secretary of the Treasury's finding of dumping, the Customs Service ascertained the foreign market value as defined in 19 U.S.C. § 164 and the purchase price as defined in 19 U.S.C. § 162, and assessed special dumping duties in an amount equal to the difference, as required by 19 U.S.C. § 161.

Plaintiff does not question the "foreign market value" as determined by Customs or the use of "purchase price" for purpose of comparison with the "foreign market value." However, plaintiff claims that the "purchase price" utilized by Customs was not the proper "purchase price" as defined by 19 U.S.C. § 162 which provides in part:

> For the purposes of sections 160 to 171 of this title, the purchase price of imported merchandise shall be the price at which such merchandise has been purchased or agreed to be purchased, prior to the time of exportation, by the person by whom or for whose account the merchandise is imported, * * *.

More particularly, in assessing the special dumping duties in question, Customs determined that the Japanese trading firm of Marubeni-Iida Co. Ltd. (Marubeni Japan) was the purchaser of the subject merchandise and that its wholly-owned subsidiary, Marubeni-Iida (America), Inc. (Marubeni America) was the person by whom or for whose account the merchandise was imported. On this basis, Customs concluded that the price paid by Marubeni Japan to the Japanese manufacturer of the merchandise,

Kubota Iron & Machinery Works, Ltd. (Kubota) represented the "purchase price" as defined by 19 U.S.C. § 162.

Plaintiff argues, however, that Marubeni Japan was related to the manufacturer, Kubota, and that Marubeni Japan acted as a selling agent for the manufacturer. In addition, plaintiff contends that it, Voss, is "the person by whom or for whose account the merchandise * * * [was] imported" so that the price paid by Voss is the "purchase price" which should have been used in determining the dumping duties.

The facts are these: In the late 1950s, plaintiff Voss which had been importing pipe from Europe became aware of a demand for asbestos cement pipe which was used as a water pipe by west coast municipalities and land developers. This demand was occasioned by the fact that such pipe is inert to the high alkaline soil conditions in the desert and is, therefore, better suited than cast iron pressure pipe for transmission of water in desert areas.

In an effort to find a source for such asbestos cement pipe, Mr. Arthur H. Voss, the president of Voss, went to Japan and had a series of meetings with Kubota, a prominent Japanese pipe manufacturing concern, which represented that it could produce asbestos cement pipe to American standard specifications. These meetings culminated with an initial agreement on August 1, 1960 followed by subsequent agreements in 1966, 1968 and 1969, none of which are relevant to the present controversy.

This brings us to the agreement of January 22, 1971 which is directly relevant here since the purchase orders for the entries in question were made in that year. This agreement was in the form of a letter from *Marubeni Japan* to *Voss* which was confirmed by Voss and Kubota. At the outset, the letter states:

---

**1.** Plaintiff's complaint in this case consists of two causes of action. In the first cause of action, plaintiff contended that the International Trade Commission's determination of injury was procedurally invalid. The court, however, held that the Commission's determination of injury was valid and entered summary judgment as to that cause of action. *Voss International Corp. v. United States*, 78 Cust.Ct. 130, C.D. 4698, 432 F.Supp. 205 (1977). Involved here is plaintiff's second cause of action.

We are pleased to confirm our agreement concerning our transaction of "KUBOTA" Asbestos Cement Pipe to be shipped during 1971, reached among Kubota, Ltd. as manufacturer, *Voss International Corp. as buyer and Marubeni-Iida Co., Ltd. as seller*, in the discussion held by the above parties on January 21, 1971 at Tokyo on terms and conditions set forth hereunder. [Emphasis added.]

The agreement then prescribes the specific dollar price for various diameters and class of pipe, FAS, Osaka; requires Voss to purchase approximately 18,000 tons of pipe during 1971; and sets forth size and length specifications.

The January 22, 1971 agreement between Voss and Marubeni Japan contained the following provision for payment:

Payment by Voss International Corp. to Marubeni-Iida (America), Inc. for Kubota Asbestos Cement Pipe is made within 140 days after the date of Bill of Lading and the balance of draft payable to Marubeni is kept always within US$500,000.00 of credit limit. When the balance of draft reaches to this credit limit, Voss International Corp. will pay in cash the old outstanding drafts prior to the original due date to get the new shipment, so that the balance of draft payable can be always kept within the US$500,000.00 of credit limit. Further the above settlement of outstanding balance of draft is to be made before Voss receives the shipping documents of new shipment. For the above earlier payment, Marubeni agreed to give the discount to Voss International Corp. which is to be at an interest rate of prime rate plus 1.5% per annum.

The agreement further provided for a sales promotion fund, as follows:

The sales promotion fund should be set up on the same arrangement as 1968 for the sales promotion expenses. Voss/Marubeni/Kubota agree that 90 cents per ton shall be contributed as follows.

a) One-third each by Voss/Marubeni/Kubota.

b) The fund to be mutually administered and mutually managed by the designated representative of each party.

Finally, the agreement contained the below quoted provision for increased costs:

The price payable by the Buyer to the Seller under this agreement shall be based upon present exchange parity rate of Japanese Yen Three Hundred Sixty to One U.S. Dollar. In case of any devaluation and/or revaluation of U.S. Dollar and/or Japanese Yen after the date of this agreement, the price shall be renegotiated among the concerned parties.

On September 7, 1971, Marubeni America and Voss reached a supplemental agreement with regard to the then existing floating or revaluation of Japanese yen. This agreement provided that the exchange loss due to yen fluctuation was for the buyer's, i. e., Voss' account. The agreement further provided that for each transaction the difference in exchange rates between the time of negotiation of the shipping documents and the time before President Nixon's proclamation of August 15, 1971 would be borne by the buyer, i. e., Voss, and that this différence would be paid by Voss to Marubeni America in cash at the exchange rate immediately after Voss received the invoice.[2] Finally, the agreement specified that it was to be applicable to all the outstanding balances of specifically listed purchase orders (which included the purchase orders here in issue).

Other facts of relevance in the case are these: The consumption entry prepared by Voss identifies Voss as the importer of record and as the person for whose account the merchandise was imported. Also, the rec-

---

2. On this aspect, the agreement stated:

For example: If the exchange rate which prevailed before [President] Nixon's proclamation was ¥357.—per U.S. Dollar and the rate at the time of document negotiations was ¥337.—per U.S. Dollar, the difference of ¥20.—per U.S. Dollar by the total invoice amount for the particular shipment will be the amount of exchange loss which will be paid in cash by the buyer. This loss amount will be converted into U.S. Dollars at the rate of ¥337.—per U.S. Dollar in this case.

ord establishes that Voss paid the duties in question. On the other hand, the special Customs invoice filled out by Marubeni Japan identifies Marubeni America as the "purchaser" of the merchandise. Further, the packing list also filled out by Marubeni Japan identifies Marubeni America as the party for whose account and risk the merchandise in question was sold. Additionally, Voss paid for the imported pipe in question by check made out to Marubeni America.

Finally, the clear weight of the evidence establishes (1) that Kubota and Marubeni Japan entered into a sales contract for exportation of cement asbestos pipe to the United States, with Kubota having no direct transactions with either Marubeni America or Voss; (2) that a contract is then concluded between Marubeni Japan and Voss for each calendar year; (3) that Kubota sells the subject merchandise to Marubeni Japan on the basis of FAS, Osaka and Marubeni Japan generally pays Kubota 80 percent of the purchase price within 20 days after the date of the sales contract and pays the balance of 20 percent within two weeks after shipping; (4) that Kubota and Marubeni Japan negotiated on a "principal to principal" basis; and (5) that Marubeni Japan sells the subject merchandise to Voss on an FAS, Osaka basis.

■ Based on the record, it is apparent that Marubeni Japan was not related to the manufacturer, Kubota, and that Marubeni Japan was not a selling agent for the manufacturer, as plaintiff contends. Rather, the record is clear that Kubota and Marubeni Japan negotiated on a principal to principal basis.

We consider next the question as to whether Marubeni America or Voss was the "person by whom or for whose account the merchandise * * * [was] imported." As to this, the court is quite mindful that in response to a questionnaire of the Customs Service, Marubeni Japan alleges that it sold the subject merchandise to Marubeni America which in turn sold it to Voss. And as previously noted, the special Customs invoice and the packing list both prepared by

Marubeni Japan are to similar effect. However, little if any weight can be given to this evidence when it is considered that the basic agreement of January 22, 1971—which is the best evidence of the substance of the transaction between the parties—makes it clear that the relationship between Voss and Marubeni is that of buyer and seller.

■ In this connection, the Customs Service determined that Marubeni Japan was the *purchaser* of the subject merchandise and that its wholly-owned subsidiary, Marubeni America, was the *person* by whom or for whose account the merchandise was imported. And it is of course basic that these determinations enjoy the presumption of correctness. However, they are erroneous as a matter of law. For the determinations that Marubeni Japan was the *purchaser* and that Marubeni America was the *person* by whom or for whose account the merchandise was imported are directly contrary to 19 U.S.C. § 162. That section, to repeat, provides that "the purchase price of imported merchandise shall be the price at which such merchandise has been purchased * * * by *the person* by whom or for whose account the merchandise is imported * * *." [Emphasis added.] Manifestly, the provision does not contemplate *two* persons or entities in its definition of "purchase price." Rather, the provision contemplates that the price that becomes the "purchase price" is the price at which *the person* by whom or for whose account the merchandise is imported agrees to purchase said merchandise. If Marubeni America is that person, as determined by Customs, it is simply not possible under the statutory scheme for Marubeni Japan to be the purchaser. Indeed, as the defendant itself states in its brief (p. 29): *"Realistically viewed, the transactions between Marubeni Japan and Marubeni America involved the movement of goods from one portion of the same corporate entity to another."* [Emphasis added.]

■ The conclusion thus becomes inescapable that Marubeni Japan was the seller of the merchandise; that Voss was the per-

son by whom the merchandise was imported; and that while Marubeni America was a corporate subsidiary of Marubeni Japan, it was in substance, insofar as the present transaction is concerned, simply one adjunct of the same Marubeni corporate entity. See *Mitsui & Co. v. United States*, 68 Cust.Ct. 266, 270, R.D. 11767 (1972).

But although Voss was the person by whom the merchandise was imported, this does not end the matter. For there remains the question as to whether or not Voss' price was a proper "purchase price" for purposes of 19 U.S.C. § 162 which at the risk of further repetition provides that the purchase price "shall be the price at which such merchandise has been purchased or agreed to be purchased, *prior to the time of exportation* * * *." [Emphasis added.]

▮ With respect to this question, plaintiff contends that the "purchase price" of the subject merchandise was that specified in the January 22, 1971 agreement between Voss and Marubeni Japan. However, I cannot agree since, as set out below, the record demonstrates that the price which Voss agreed to pay Marubeni for the merchandise was not actually established until February 18, 1972, five days after exportation.

At the outset, it is clear that the Antidumping Act envisions that a definite and determinable purchase price (whether actual or agreed) must exist prior to the date of exportation for comparison with the foreign market value—this in order to determine the margin of dumping. In this respect, Mr. Voss, the president of Voss, testified that at the time Voss confirmed the January 22, 1971 agreement with Marubeni Japan "[t]here was no way of knowing" exactly what the total amount for the imported merchandise would be. Under the terms of this agreement, the price payable by Voss to Marubeni was to be based upon the then exchange parity of 360 Japanese yen to one U.S. dollar. However, the agreement further provided that "[i]n case of any devaluation and/or revaluation of U.S. Dollar and/or Japanese Yen after the date of this agreement, the price shall be renegoti-

ated among the concerned parties." Therefore, as of January 22, 1971, the prices set forth in the agreement of that date were subject to renegotiation in the event that the Japanese yen was devalued after the date of that agreement.

Thereafter, on September 7, 1971, Voss and Marubeni entered into a supplemental agreement concerning the effect of any revaluation of the yen. That agreement, as previously noted, provided that Voss would assume the loss due to yen fluctuation; and that Voss would pay to Marubeni "[t]he difference in exchange rates between the time of negotiation of the shipping documents and the time before [President] Nixon's proclamation of August 15, 1971." Further, at trial, Mr. Voss acknowledged that pursuant to the supplemental September 7, 1971 agreement, the amount representing the loss due to currency fluctuation, which Voss had to bear, would be determined on the date that Voss received the shipping documents and that Voss would know the exact price it had to pay for the merchandise on that date. The record is uncontroverted that Voss received the shipping documents on *February 18, 1972.* Therefore, as Mr. Voss conceded at trial, at the time the merchandise was exported, i. e., *February 13, 1972,* Voss did not know the exact amount it would have to pay for the merchandise. Indeed, Mr. Voss testified that on or before February 13, 1972, the date of exportation, it was *impossible* to know the exact price for the merchandise.

In short, the September 7, 1971 supplemental agreement provided, in essence, that the actual price which Voss was required to pay would be determined by a condition subsequent, i. e., the possible devaluation or revaluation of the Japanese yen. The date upon which the effect of currency fluctuation was to be determined was not set until the date of the negotiation of the shipping documents, which in this case was February 18, 1972. Therefore, as we have seen, the total, definite, and fixed price which Voss agreed to pay for the merchandise was not finally determined until February 18, 1972, five days after the date of exportation, February 13, 1972.

Stated otherwise, at the time of the original agreement, January 22, 1971, and at the time of the supplemental agreement, September 7, 1971, it was not only impossible to know what effect currency fluctuations would have on the ultimate purchase price but, also, whether there would be any effect at all. As previously observed, at the time the merchandise was exported, February 13, 1972, Voss did not know the exact amount it would have to pay for the merchandise. And the price which Voss eventually paid for the merchandise was not the price set forth in the January 22, 1971 agreement because the value of the Japanese yen subsequently changed.

Accordingly, the price which Voss paid or agreed to pay Marubeni was not the "purchase price" for purposes of 19 U.S.C. § 162, because it was not a price paid or agreed to be paid *prior to the date of exportation*. The supplemental agreement between Voss and Marubeni regarding the loss due to currency fluctuation frustrates the intent of the Antidumping Act since it is an agreement to pay an amount to be determined after the date of exportation and thus may not form a basis for the determination of the "purchase price" as defined in 19 U.S.C. § 162.

For the foregoing reasons, the action is hereby dismissed.